UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RANDALL RAAR, #177223,

                Petitioner,

                                      CASE NO. 11-CV-14170

v.

                                        HON. MARK A. GOLDSMITH

STEVE RIVARD,

                Respondent.

_____/

**OPINION AND ORDER (1) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, and (3) GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

## I. INTRODUCTION

Petitioner Randall Raar, presently incarcerated at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a pro se habeas corpus petition pursuant to 28 U.S.C. § 2254. Petitioner challenges his Washtenaw County Circuit Court conviction and sentence of thirty to sixty years for first-degree criminal sexual conduct. Pet. at 1 (Dkt. 1). Respondent Steven Rivard urges the Court to deny the petition on grounds that most of Petitioner's claims are barred by the doctrine of procedural default and all the claims lack merit. Answer in Opp'n at 2 (Dkt. 8). Having reviewed the pleadings and record, the Court concludes, for the reasons set forth below, that Petitioner's claims do not warrant habeas relief.

## II. BACKGROUND

Petitioner was charged in Washtenaw County, Michigan with first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b(1), and possession of a firearm during the commission of, or attempt to commit, a felony, Mich. Comp. Laws § 750.227b. The charges arose from

allegations that Petitioner inserted his finger in his five-year-old neighbor's vagina during an incident at his home in 1989 or 1990. The child ("HW")[1] did not disclose the incident to anyone until 2006. Petitioner was subsequently charged and tried before a jury in Washtenaw County Circuit Court where the testimony established that,

> [i]n April 2006, the police received information that caused them to investigate defendant and canvass his former neighborhoods. At that time, they had contact with the victim, who alleged that defendant had sexually assaulted her when she was four or five years old by digitally penetrating her vagina. At trial, the 21–year–old victim testified that defendant and his roommate, Robert Higgins, lived next door to her family's home. Defendant and Higgins encouraged the neighborhood children to come to their home and use their above-ground pool. The victim indicated that she and her neighbor, AB, were among the children who spent time at defendant's house. The victim explained that defendant and Higgins, both dressed in swimsuits, would be in the pool and catch the children as they came down an attached slide. The victim stated that defendant would "catch [them] between [their] legs and put his hands—or try to put his hands up [them]."
>
> AB testified that she recalled the swimming pool and Higgins, and she also recalled defendant taking several photographs of them. With regard to the charged offense, the victim recalled that on one occasion defendant and Higgins took her and AB into a back room of their house and made them sit on the bed. Higgins then locked the door, and defendant pulled out a gun from a nightstand and placed it on the nightstand.[2] Defendant threatened that he would not hurt their parents as long as they followed instructions. The victim stated that defendant approached her, pulled his pants down, put his penis "in [her] face," "then stuck his penis in [her] mouth and then pulled [her] pants down and [started] fondling [her] between [her] legs and sticking his fingers in [her]." She explained that defendant allowed them to leave after she calmed down, and recalled seeing blood on her bathing suit bottoms and throwing them away because she was afraid. The victim did not tell anyone what happened because she "believed [defendant] when he said he was gonna kill [her] parents," and she believed that he was capable of carrying out the threat. The victim's mother testified that around the time of the assault, the victim "acted out" and started "bed-wetting."

---

[1] The Court refers to the complaining witness and the other alleged victims of criminal sexual conduct by their initials.

[2] AB did not recall the incident in the back room.

People v. Raar, No. 279463, 2009 WL 80357, at *1 (Mich. Ct. App. Jan. 13, 2009) (footnote in original).  The prosecutor maintained that Petitioner was guilty of first-degree criminal sexual conduct either because he sexually penetrated a person under thirteen years of age or because he used a weapon to accomplish sexual penetration.  4/11/07 Tr.at 22 (Dkt. 9-12); see also Mich. Comp. Laws § 750.520b(1)(a) (sexual penetration of a person under the age of thirteen) and Mich. Comp. Laws § 750.520b(1)(e) (sexual penetration while "[t]he actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon").

Petitioner did not testify; his defense was that the incident did not happen.  His only witness was Quinn Lapeer, a case worker for the Washtenaw County Sheriff's Department.  Ms. Lapeer testified that she interviewed HW in 1990 when Detective Ted Williams was investigating a criminal sexual conduct case involving Petitioner and Robert Higgins.  According to Ms. Lapeer, HW denied that anyone, including Petitioner and Robert Higgins, had ever touched her "privates," breasts, or buttocks.  HW also denied that any grown-up had ever told her to keep a secret, and she stated that, if anyone tried to touch her "privates" or did anything she did not like, she would tell her parents about it.  4/10/07 Tr. at, 92-99 (Dkt. 9-11).

On April 11, 2007, the jury acquitted Petitioner of the felony firearm count, but found him guilty of first-degree criminal sexual conduct.  4/11/07 Tr.at 72.  The trial court sentenced Petitioner on May 3, 2007, to imprisonment for thirty to sixty years with 309 days of credit for time served.  5/3/07 Tr. at 28 (Dkt. 9-13).

Petitioner appealed his conviction, arguing that: (i) the introduction of testimony regarding alleged "bad acts" deprived him of a fair trial; (ii) the trial court's denial of his request

3

for expert assistance deprived him of due process; (iii) the improper exclusion of defense evidence prejudiced him; (iv) the prosecutor's improper arguments prejudiced him; (v) the trial court deprived him of his Sixth Amendment rights by interfering with his right to retain counsel of choice; (vi) his sentence was based on inaccurate information and guidelines; and (vii) his trial attorney was ineffective. The Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished, per curiam decision. See Raar, 2009 WL 80357. It appears that Petitioner raised only three issues regarding the improper exclusion of evidence, his sentence, and his trial attorney on appeal to the Michigan Supreme Court. On May 27, 2009, the state supreme court denied leave to appeal because it was not persuaded to review the issues. See People v. Raar, 765 N.W.2d 299 (Mich. 2011) (table).

On or about December 8, 2009, Petitioner filed a motion for relief from judgment in which he alleged that the prosecution was time-barred, that the counselor's editorialized version of the alleged victim's declarations violated due process, and that he was entitled to resentencing due to errors in scoring the sentencing guidelines. Pet'r Mot. (Dkt. 9-19). The State argued in a response to Petitioner's motion that Petitioner's first two claims were barred from review because they could have been raised on direct review, and that Petitioner's sentencing claim was barred from review because the Michigan Court of Appeals adjudicated the claim on direct appeal. Resp. Br. at 2-11 (Dkt. 9-20). The State also argued that Petitioner's claims lacked merit. Id. The trial court denied Petitioner's motion in a short order, stating that it was denying relief for the reasons given in the State's response to the motion. 4/16/10 Order (Dkt. 9-21).

On appeal from the trial court's decision, Petitioner argued that: (i) the statute of limitations was violated; (ii) the victim's counselor gave an editorialized version of the

4

complainant's statements to the counselor; (iii) he was entitled to resentencing; (iv) the prosecution relied on false and perjured testimony; (v) he was prejudiced by the lack of knowledge that two people recalled a pelvic exam being performed on the complainant after the alleged attack; (vi) the victim's mother made false statements in medical documents; (vii) he was the target of a selective, malicious, and vindictive prosecution; (viii) the inclusion of the complainant's counseling records prejudiced him; (ix) he was prejudiced by the continuation of a sixteen-year-old witch hunt; and (x) the improper handling of the complainant's counseling records prejudiced him.  The Michigan Court of Appeals denied leave to appeal the trial court's decision "for failure to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)."  People v. Raar, No. 298536 (Mich. Ct. App. Sept. 29, 2010) (Dkt. 9-16).  Petitioner raised the same ten claims in the Michigan Supreme Court, which also denied leave to appeal for failure to establish entitlement to relief under Rule 6.508(D).  See People v. Raar, 796 N.W.2d 63 (Mich. 2011) (table).   On July 25, 2011, the state supreme court denied reconsideration.  See People v. Raar, 800 N.W.2d 68 (Mich. 2011) (table).

On September 22, 2011, Petitioner filed his habeas corpus petition under 28 U.S.C. § 2254.  He raises the following fifteen claims: (i) he was denied a fair trial by the introduction of testimony of alleged bad acts; (ii) he was denied due process when the trial court refused his request for expert assistance; (iii) he was prejudiced by the exclusion of defense evidence; (iv) the prosecutor made improper arguments; (v) the trial court deprived him of his Sixth Amendment rights by interfering with the retention of counsel of his choice; (vi) he is entitled to be resentenced because his sentence was based on inaccurate information and guidelines; (vii) trial counsel was ineffective; (viii) the limitations period was violated; (ix) he was prejudiced by

5

a counselor's editorialized version of the alleged victim's statements to her; (x) he was denied due process of law by the State's knowing use of false and perjured testimony; (xi) he was prejudiced by the lack of knowledge that two people can recall a pelvic exam being performed on the alleged victim after the alleged attack; (xii) he was the target of a selective, malicious, and vindictive prosecution by the Michigan Attorney General; (xiii) he was prejudiced by the inclusion or admission of the alleged victim's counseling records; (xiv) he was prejudiced by the continuation of a sixteen-year-old witch hunt; and (xv) he was prejudiced by the improper obtaining and handling of the alleged victim's counseling records. Pet. Br. at ii - iii. Respondent argues that Petitioner procedurally defaulted claims one, two, part of four, five, part of six, and eight through fifteen by not objecting to the claimed errors in the trial court or by failing to exhaust state remedies for the claims while there was an available remedy. Answer in Opp'n at 11- 13.

Importantly, procedural default "is not a jurisdictional bar to review on the merits." Howard v. Bouchard, 405 F.3d 459, 476 (6th Cir. 2005). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." Hudson v. Jones, 351 F.3d 212, 215 (6th Cir. 2003). To obtain habeas relief on claims that were procedurally defaulted in state court, a petitioner "must establish cause and prejudice for the defaults" and "also show that the claims are meritorious." Babick v. Berghuis, 620 F.3d 571, 576 (6th Cir. 2010). Because Petitioner's claims do not warrant habeas relief, and a "cause-and-prejudice analysis adds nothing but complexity to the case," the Court excuses the alleged defaults and "cut[s] to the merits." Id.

6

## III.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  Harrington v. Richter, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  While some federal judges find the limitations of 28 U.S.C. § 2254(d) "too confining," all federal judges must obey the provision of law.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (O'Connor, J., Op. of the Court for Part II).

Thus, section 2254 imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.  Renico v. Lett, 559 U.S. 766, 773 (2010) (quotation marks, internal citations, and footnote omitted).  "A state

7

court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 131 S. Ct. at 786 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-787.

## IV. ANALYSIS

### A. "Bad Acts" Evidence (Claim I)

Petitioner alleges that testimony about his other "bad acts" deprived him of a fair trial because the other acts were unrelated and dissimilar to the allegations in the case for which he was on trial. Petitioner also claims that testimony about other "bad acts" was more prejudicial than probative. Pet. Br. at 4-10. The disputed evidence was admitted through the testimony of AS, a 37 year-old woman who

> testified that when she was eight years old, defendant would give her odd jobs, pay attention to her, and reward her with candy and soda while she was at his house and in his yard. Defendant eventually began to talk to her about sex, gave her alcohol, and said he would teach her what a man wanted. During this time, he photographed her and her friend in the nude. When AS was 10 or 11 years old, defendant started rubbing AS's breasts, and, when she was 11 or 12, he rubbed her vagina. Defendant had sexual intercourse with AS when she was 13 years old. Defendant encouraged AS to use his house, and defendant subsequently told AS if she told anyone about the incidents, he would hurt her mother and grandparents.

Raar, 2009 WL 80357, at *1. Petitioner claims that this evidence was not relevant to whether he threatened and sexually assaulted a four- or five-year-old child and that it was so dissimilar to the

crime for which he was on trial that it could not be considered part of the same plan, scheme, or system.  Pet. at 2-3; Pet. Br. at 7.

      The Michigan Court of Appeals adjudicated Petitioner's claim on the merits and found no merit in it because the evidence was properly admitted under Michigan Rule of Evidence 404(b) to demonstrate a common scheme or plan in doing an act.  Raar, 2009 WL 80357, at *2.  This Court finds no merit in Petitioner's claim because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . .  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, see Old Chief v. United States, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); Huddleston v. United States, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

Bugh v. Mitchell, 329 F.3d 496, 512-513 (6th Cir. 2003).  Consequently, "there is no Supreme Court precedent that the trial court's decision could be deemed 'contrary to' under AEDPA."  Id. at 513.  Petitioner's personal disagreement with the state appellate court's ruling that the "other acts" evidence was properly admitted "is not cognizable on federal habeas review, inasmuch as it involves no constitutional dimension."  Bey v. Bagley, 500 F.3d 514, 523 (6th Cir. 2007).

      Even if Petitioner's claim were cognizable, he is alleging a mere error of state law, and "federal habeas corpus relief does not lie for errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam)).  "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the

9

proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004).

It was not fundamentally unfair to admit the "bad acts" evidence in this case because the evidence was admitted to demonstrate a common scheme or plan in doing an act, not to prove that Petitioner was a bad person. This was proper under Michigan Rule of Evidence 404(b)(1), which states that, although "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person," it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act . . . ."

The trial court, moreover, charged the jurors not to use evidence of Petitioner's prior improper acts to conclude that he was a bad person or likely to commit crimes. The court also cautioned the jury not to convict Petitioner because they thought he was guilty of other bad conduct. The court stated that the jurors could use the evidence only to determine whether it showed that Petitioner engaged in a plan, scheme, or system that he had used before or since. 4/11/07 Tr. at 65-66. The trial concluded its jury instruction by stating that, "[a]ll the evidence must convince you beyond a reasonable doubt that the Defendant committed the alleged crime or you must find him not guilty." Id. at 66.

Although Petitioner claims that the crime against AS was dissimilar to the allegations made by HW, the Michigan Court of Appeals disagreed, stating that

> there was a concurrence of common features that defendant utilized against the young girls. Defendant befriended and socialized with the young girls, created an enticing environment that gave him access to them, provided treats or use of his pool, photographed them, and threatened their families to ensure that the young girls would not disclose the acts.

<u>Raar</u>, 2009 WL 80357, at *2.  The Court of Appeals reasonably concluded that Petitioner took advantage of his relationships with young girls to perpetrate sexual abuse and that the commonality of the circumstances of the other acts evidence and the charged crimes was sufficiently similar to establish a scheme, plan, or system in doing an act.

To summarize, Petitioner's claim is not cognizable on habeas review and, even if it were, it was not fundamentally unfair to admit the "other acts" evidence.  Petitioner therefore has no right to relief on the basis of his first claim.

### B.  Denial of Appointment of an Expert Witness (Claim II)

Before trial, defense counsel asked the trial court to approve funds for an expert defense witness to testify about how children react to sexual abuse and whether the complainant's allegations of prior sexual abuse could be the product of false or repressed memories, bad dreams, or confusion of events.  The prosecutor argued in opposition that the case was not one of repressed memory, because the complainant knew what happened to her and simply kept it to herself.  The trial court denied the defense motion on the basis that defense counsel had not made a sufficient showing of what the expert witness could offer.  2/8/07 Tr. at 14-15 (Dkt. 9-8).

Defense counsel renewed her motion for an expert witness on the first day of trial.  She argued that, after reviewing HW's counseling records, she thought HW's allegations may have been the result of her mother's suggestion that HW was probably sexually assaulted by two or three men.  The trial court denied defense counsel's renewed motion because the court was not persuaded that an expert opinion was necessary.   The court nevertheless ruled that defense counsel could argue "suggestibility" to the jury.  4/9/07 Tr. at 13-14.

Petitioner contends that the trial court's denial of his request for expert assistance deprived him of due process. Pet. Br. at 11-19.  He claims that he needed a clinical psychologist to evaluate the evidence against him and to show the incongruity of an adult who, despite having numerous opportunities to report the incident, waited fifteen years to accuse him.  Id. at 14.  He further alleges that an expert witness could have assisted the jury in evaluating the complainant's credibility and in understanding popular misconceptions of child abuse allegations.  Id. at 15.

The Michigan Court of Appeals concluded on review of Petitioner's claim that the trial court did not abuse its discretion when it denied Petitioner's request for appointment of an expert witness at public expense.  Raar, 2009 WL 80357, at *3.  This Court finds no merit in Petitioner's claim because Petitioner has not pointed to any Supreme Court case that requires appointment of an expert witness to assist an indigent defendant on matters of child sexual abuse or repressed memories.  The Supreme Court has held that, in cases where a defendant's sanity at the time of the offense is a significant factor at trial, States must provide an indigent defendant with access to a competent psychiatrist to conduct an appropriate examination and to assist the defendant in the preparation and presentation of a defense.  Ake v. Oklahoma, 470 U.S. 68, 83 (1985).  But the Supreme Court has not extended the right to other expert witnesses.  Conklin v. Schofield, 366 F.3d 1191, 1206 (11th Cir. 2004) (denying appointment of independent pathologist); Hawkins v. Mullin, 291 F.3d 658, 671 n.6 (10th Cir. 2002); see also Sanchez v. Hedgpeth, 706 F. Supp. 2d 963, 988 (C.D. Cal. 2010) (stating that "the Supreme Court has declined to consider whether the Ake holding extends beyond psychiatrists to other expert witnesses and investigators" and that "the Supreme Court has not clearly established a constitutional right to the appointment of forensic experts").

12

While it is true that states must "provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners," Britt v. North Carolina, 404 U.S. 226, 227 (1971), Petitioner was not deprived of the basic tools of an adequate defense.  His trial attorney had an opportunity to cross-examine HW, her mother, her grandmother, and the psychotherapist who counseled HW.  Defense counsel, in fact, specifically questioned HW about the memories that came back to her as a teenager and why she did not mention Petitioner when she participated in psychotherapy in 1999.  4/9/07 Tr. at 207-209 (Dkt. 9-10).  Defense counsel also asked HW whether she could have been remembering her babysitter who also sexually abused her.  Id. at 210.

Furthermore, as the Michigan Court of Appeals recognized, there was no evidence that the victim suffered from repressed memory.  She testified that

> she did not disclose defendant's sexual abuse until years later because she feared that defendant would harm her parents, and [she] consistently testified that her memories of what defendant had done were not repressed, ha[d] always been with her, and that she "always knew what defendant did to [her].  It never went away."  Additionally, the record supports the victim's claims that she feared defendant.  The victim's grandmother testified that she recalled visiting the family when the victim was approximately five years old, and the victim ranting that she "hated" defendant because he was "going to kill her mother."  Also, while the victim was in counseling in 1991 to 1993, related to her molestation by a babysitter, she repeatedly told the psychotherapist that she was afraid of defendant because he wanted to hurt her mother.  The psychotherapist explained that it was common for children not to disclose abuse because of threats.

Raar, 2009 WL 80357, at *4.

The state appellate court's conclusion — that no abuse of discretion occurred when the trial court denied Petitioner's request for appointment of an expert witness — was not contrary to

13

any Supreme Court decision.  Petitioner, therefore, has no right to relief on the basis of his second claim.

### C.  Exclusion of Evidence (Claim III)

Petitioner contends that the trial court improperly prevented Detective William Maloney from testifying that, in 1991 when the complainant was still a child, she failed to mention Petitioner during an interview concerning the complainant's abusive babysitter.  Pet. at 3; Pet. Br. at 20-24.  Petitioner asserts that the exclusion of this evidence violated his rights to due process, to a fair trial, and to present a defense.  Pet. Br. at 21.

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense," but the Supreme Court has "never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability — even if the defendant would prefer to see that evidence admitted." Crane v. Kentucky, 476 U.S. 683, 690 (1986) (quotation marks omitted).  In other words, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions."  United States v. Scheffer, 523 U.S. 303, 308 (1998).  A habeas court's duty "is not to determine whether the exclusion of the evidence by the trial judge was correct or incorrect under state law, but rather whether such exclusion rendered petitioner's trial so fundamentally unfair as to constitute a denial of federal constitutional rights."  Lewis v. Wilkinson, 307 F.3d 413, 420 (6th Cir. 2002) (quotation marks omitted).

Petitioner's claim arose on the third and final day of trial when Detective Maloney failed to appear as a defense witness because he misunderstood when he was supposed to be in court. Defense counsel asked the trial court whether she should tell Maloney to come as soon as

14

possible or whether the court wanted to have Maloney's testimony from the preliminary examination read into the record. 4/11/07 Tr. at 7. The prosecutor objected to having Maloney testify because Maloney's interview with HW concerned her babysitter's sexual abuse of her. Id. at 8. According to the prosecutor, the interview had nothing to do with Petitioner and, therefore, it would be improper to ask Maloney to comment on whether HW mentioned Petitioner during the interview with him. Id. at 8-9. The trial court agreed and ruled that Maloney could not testify. Id. at 17-18. The trial court pointed out that HW knew at the time of the interview that she was being questioned about the babysitter, and the fact that she did not volunteer anything about Petitioner was irrelevant. Id. at 18.

The Michigan Court of Appeals agreed that the proffered evidence was irrelevant. Raar, 2009 WL 80357, at *4. The Court of Appeals also concluded that Petitioner's constitutional right to present a defense was not violated, because the trial court's ruling did not exclude all the evidence challenging the victim's credibility. Id. Petitioner contends that the state courts' rulings were unreasonable. Pet. Br. at 21-22. He argues that, if the jury had known HW mentioned other abusive people during the interview, but not him, they might have concluded that he did nothing improper and that the passage of time and bad dreams caused HW to confuse him with others who had abused her. Id.

Defense counsel, however, questioned HW and other witnesses about HW's failure to mention Petitioner when given an opportunity to do so. See, e.g., 4/9/07 Tr. at 208-209 (defense counsel's questions about HW's failure to mention Petitioner when she resumed therapy as a teenager in 1999); 4/10/07 Tr. at 16-19) (defense counsel's questions and the psychotherapist's testimony that, in 1991 and 1992, HW did not say anything about Petitioner penetrating her even

though she did say that Bob Higgins and the babysitter had engaged in sexual activity with her); id. at 23-24 (the psychotherapist's testimony that, in 1999, when HW resumed her counseling sessions due to her memories of her babysitter's sexual abuse, she said nothing about Petitioner).

The record demonstrates that Petitioner was afforded an opportunity to show that HW did not disclose the alleged abuse, even though there were occasions when she could have talked about the incident with Petitioner.  Further, the interview with Detective Maloney concerned an unrelated incident involving someone other than Petitioner.   Consequently, it was not fundamentally unfair to prevent Detective Maloney from testifying about HW's comments to him during his interview with her in 1991.  Excluding the evidence did not deprive Petitioner of his right to present a defense or his rights to due process and a fair trial.  Lewis, 307 F.3d at 420. Petitioner, therefore, has no right to relief on the basis of his third claim.

### D.  The Prosecutor's Comments and Defense Counsel's Failure to Object (Claims IV and VII)

Petitioner alleges that the prosecutor made improper remarks during his opening statement and closing argument. Pet. Br. at 25-30.  In a related claim, Petitioner argues that his trial attorney was ineffective for failing to object to the prosecutor's opening statement.  Pet. at 4; Pet. Br. at 40-41.  The Michigan Court of Appeals rejected both arguments.  Raar, 2009 WL 80357, at *5-6.  The Court of Appeals determined that the prosecutor's remarks were proper and that the result of the proceeding would not have been different had defense counsel objected.

#### 1.  Clearly Established Federal Law

The Supreme Court has stated that prosecutors "may strike hard blows," but they are "not at liberty to strike foul ones.  It is as much [their] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about

16

a just one." <u>Berger v. United States</u>, 295 U.S. 78, 88 (1935), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Stirone v. United States</u>, 361 U.S. 212 (1960).  But "[c]laims of prosecutorial misconduct are reviewed deferentially on habeas review." <u>Millender v. Adams</u>, 376 F.3d 520, 528 (6th Cir. 2004).  "The relevant question is whether the prosecutor['s] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986).

To prevail on his claim about trial counsel, Petitioner must demonstrate that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id</u>.  To satisfy the prejudice prong of the <u>Strickland</u> test, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but that "[t]he likelihood of a different result must be substantial, not just conceivable." <u>Richter</u>, 131 S. Ct. at 792 (quoting <u>Strickland</u>, 466 U.S. at 693).

## 2.  The Alleged Attack on Petitioner's Character

Petitioner alleges that the prosecutor made an improper character argument when he said during his opening statement that Petitioner had "a powerful attraction to and lust for children" and that Petitioner and Robert Higgins "molested children."  4/9/07 Tr. at, 129-130. Petitioner

claims that this was an improper characterization because he was convicted of only one prior act of criminal sexual conduct and that act occurred fifteen years earlier. Pet. Br. at 25-28.

While it is true that a prosecutor "must refrain from interjecting personal beliefs into the presentation of his case," United States v. Young, 470 U.S. 1, 8-9 (1985), the prosecutor in Petitioner's case was explaining his theory of the case and what the evidence would show. He stated that the theme of the case was an adult preying on a child. 4/9/07 Tr. at 129-130. He then said that the facts would show that Petitioner had a powerful attraction to, and lust for, children and that the jurors would hear testimony that both Petitioner and Higgins molested children. Id. Comments as insulting, or more insulting, than the prosecutor's comments in this case have been found not to deprive a petitioner of a fair trial. See Bedford v. Collins, 567 F.3d 225, 234 (6th Cir. 2009) (concluding that, calling the defendant a demon did not deprive the petitioner of a fair trial or require setting aside a state conviction); Olsen v. McFaul, 843 F.2d 918, 930 (6th Cir. 1988) (concluding that, referring to the defendant as a deadbeat, thief, creep, and liar did not deprive the petitioner of a fair trial even though the proof of guilt was not overwhelming and even though the trial court failed to directly admonish the jury to disregard the remarks).

Furthermore, the testimony at trial substantiated the prosecutor's argument. See Trial Tr. 4/9/07 at 157-158 (AS's testimony that Petitioner touched her breasts and genital area when she was ten or eleven years old and that Petitioner had sexual intercourse with her when she was thirteen years old); id. at 190-194 (HW's testimony that, when she was four or five years old, Petitioner put his penis in her mouth and inserted his finger in her vagina); id. at 229 (the mother's testimony that Petitioner had said he would have sex with kids if they were willing); id. at 249 (AB's testimony that, when she and HW were children and went to Petitioner's pool,

Petitioner would pick her up between her legs and touch her vaginal area), 4/10/07 Tr. at 46-47, 49-50 (inmate Clayton Hill's testimony that Petitioner admitted to doing sexual things to children, having sex with AS, and "fingering" HW when she was five years old); id. at 75 (inmate Daniel Gissantaner's testimony that Petitioner admitted to molesting a little girl and putting his finger in the girl).

The trial court, moreover, explained that the opening statements were not evidence. 4/9/07 Tr. at 122. The trial court also instructed the jurors that they were the triers of fact, that they should not be influenced by sympathy or prejudice, and that they should find Petitioner not guilty, unless the prosecutor proved each element of the offense beyond a reasonable doubt. 4/11/07 Tr. at 59-60.

The Court concludes that the prosecutor's disputed remarks were not improper, Collins, 567 F.3d at 234, and that any impropriety in the remarks was cured by the trial court's jury instructions. It follows that trial counsel was not constitutionally ineffective for failing to object to the remarks. An attorney cannot be ineffective for failing to raise an issue that lacks merit. Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001).

### 3. The Alleged Civic Duty Argument

Petitioner claims that the prosecutor made an improper appeal to the jurors' sense of civic duty during his closing argument. Petitioner asserts that the jury might have acquitted him in the absence of the argument. Pet. at 3; Pet. Br. at 28-30.

 "It is improper for a prosecutor to suggest that a jury has a civic duty to convict." Thornburg v. Mullin, 422 F.3d 1113, 1134 (10th Cir. 2005) (citing Spears v. Mullin, 343 F.3d

1215, 1247 (10th Cir. 2003)).  Here, the prosecutor said, "I'm asking you not to fail [the complainant] now.  And, by extension, the community."  4/11/07 Tr. at 36.

Defense counsel immediately objected to the comment on the basis that it was a civic duty argument, but before the trial judge could respond, the prosecutor said,

> I'm not making that argument.  I'm stating that . . . you represent the community, you represent the people.  We can't [have] everybody in here to decide a case, so you come in as representatives to do that and to uphold the law in the case.  And, so I'm asking that you do that in this case and that you find this Defendant guilty as charged on both of these counts and, hopefully, then justice will finally prevail in this case.

Id.  The prosecutor then thanked the jurors for paying attention, and defense counsel gave her closing argument without seeking a ruling on her objection.  Id.

By failing to pursue the ruling, Petitioner acquiesced to the prosecution's argument, thereby waiving his right to claim that the trial court erred under Michigan law.  People v. Gay, Nos. 246720 and 246721, 2004 WL 2072048, at *5 (Mich. Ct. App. Sept. 16, 2004) (holding that defense counsel's acquiescence to the trial court's actions waived objections); People v. Carter, 612 N.W.2d 144, 149 (Mich. 2000) (defining waiver "as the intentional relinquishment or abandonment of a known right") (quotation marks omitted); see also Bean v. Warren, No. 10-cv-10564, 2011 WL 2601012, at *4 (E.D. Mich. June 30, 2011) (applying Michigan waiver rule to reject a petitioner's claim in a habeas proceeding).

Furthermore, even if asking the jury not to fail the community implied that the jury had a civic duty to convict Petitioner, the prosecutor immediately explained that he was simply asking the jurors to find Petitioner guilty so that justice would prevail.  Nothing prevents a prosecutor from appealing to the jurors' sense of justice.  Bedford, 567 F.3d at 234.  And urging the jury to do justice for a victim is proper.  United States v. Boyd, 640 F.3d 657, 670 (6th Cir. 2011).

Furthermore, the trial court instructed the jurors at the beginning and the close of the case that the attorneys' statements and arguments were not evidence, but only meant to help them understand the evidence and each side's legal theories.  4/9/07 Tr. at 122; 4/11/07 Tr. at 61. These instructions served to mitigate any prejudicial effect caused by the prosecutor's remarks. United States v. Gracia, 522 F.3d 597, 604 (5th Cir. 2008).  The Court, therefore, concludes that Petitioner's claim about the prosecutor's closing argument does not warrant habeas corpus relief.

### E.  The Right to Counsel of Choice (Claim V)

Petitioner claims that the trial court deprived him of his Sixth Amendment right to retained counsel of choice by permitting his retained attorney to withdraw from the case without conditioning the withdrawal on a refund of the retainer that Petitioner paid the attorney.  Pet. at 4; Pet. Br. at 31-35.  The Michigan Court of Appeals rejected Petitioner's claim because Petitioner did not offer any support for his claim that the trial court was required to order defense counsel to return the retainer as a condition of withdrawal.  Raar, 2009 WL 80357, at *6.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a defendant in a criminal case the right to the assistance of counsel in his or her defense.  Faretta v. California, 422 U.S. 806, 807 (1975).  "[A]n element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him."   United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006).  In other words, "the Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624-625 (1989).

"A choice-of-counsel violation occurs <u>whenever</u> the defendant's choice is wrongfully denied." <u>Gonzalez-Lopez</u>, 548 U.S. at 150 (emphasis in original). Consequently, "the wrongful deprivation of choice of counsel is structural error, immune from review for harmlessness, because it pervades the entire trial." <u>Kaley v. United States</u>, 134 S. Ct. 1090, 1102 (2014) (quotation marks omitted). The petitioner "need not show prejudice or demonstrate that the counsel he received was ineffective." <u>Abbey v. Howe</u>, 742 F.3d 221, 227 (6th Cir. 2014).

Petitioner retained an attorney to represent him in his Washtenaw County case and in a Wayne County case. About four months before trial, the attorney moved to withdraw from the Washtenaw County case because Petitioner had indicated that he no longer wished to honor his financial obligations to the attorney and because Petitioner had asked the judge in the Wayne County case to remove the attorney from that case. 11/30/06 Tr. (Dkt. 9-5). Although Petitioner approved of the attorney's performance in the Washtenaw County case, the attorney did not think he could continue working with Petitioner because Petitioner did not trust him to do a good job in the other case. Petitioner objected to having the attorney removed from the Washtenaw County case, although he complained that the attorney had not given him any discovery materials. The trial court nevertheless granted the attorney's motion to withdraw as Petitioner's attorney on the basis that there was a breakdown in the attorney-client relationship. <u>Id.</u> at 8. And after Petitioner stated that he had no money with which to retain an attorney, the trial court agreed to appoint a public defender to represent Petitioner. <u>Id.</u> at 9. Petitioner then asked for a refund of the $15,000 that he had given the attorney for the Washtenaw County case. <u>Id.</u> at 9-10. The trial court responded, "Well, that's not before me." <u>Id.</u> at 10.

As noted above, Petitioner had a right to retained counsel of choice. But "the right to counsel of choice is (like most rights) not absolute." Kaley, 134 S. Ct. at 1107 (Roberts, C.J., dissenting). Furthermore, Petitioner has not cited, and the Court has not found, any Supreme Court decision holding that the right to retained counsel of choice is violated by a court's refusal to order a retained attorney to refund any money paid to the attorney. Petitioner, therefore, has no right to relief on the basis of his claim that the state trial court deprived him of retained counsel of choice.

## F. The Sentence (Claim VI)

Petitioner alleges next that the trial court sentenced him on the basis of misinformation and inaccurately scored sentencing guidelines. Pet. at 4; Pet. Br. at 36-39. The Michigan Court of Appeals rejected all of Petitioner's sentencing claims. Raar, 2009 WL 80357, at *7-9.

### 1. The Sentencing Report

Petitioner alleges that the presentence information report about him contained stale allegations from someone who supposedly saw videos of Petitioner engaged in sex acts with underage individuals. Pet. Br. at 36-37. Petitioner claims that this was hearsay, which was never substantiated, nor verified, and that the trial court relied on the inaccurate information to sentence him. Id.

The trial court did state at Petitioner's sentencing that hearsay could be used in the presentence report, even though it was not admitted as evidence at Petitioner's trial. The trial court also said that the hearsay was relevant to its opinion on the matters at hand. 5/3/07 Tr. at 5 (Dkt. 9-) The Michigan Court of Appeals, however, rejected Petitioner's claim because Petitioner did not challenge the accuracy of the information, at or before his sentencing, or as

23

soon as the inaccuracy could have been discovered.  Raar, 2009 WL 80357, at *7.  The Court of

Appeals also noted that Petitioner's minimum sentence of thirty years fell within the sentencing

guidelines of 180 to 360 months.  Id.

This Court declines to grant relief, because the contention that a presentence information

report contains inaccurate information raises

> [a] state law issue[], and "federal habeas corpus relief does not lie for
> errors of state law."  Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092,
> 111 L.Ed.2d 606 (1990).  "In conducting habeas review, a federal court is
> limited to deciding whether a conviction violated the Constitution, laws, or
> treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 68, 112
> S.Ct. 475, 116 L.Ed.2d 385 (1991).

Rodriguez v. Jones, 625 F. Supp. 2d 552, 569 (E.D. Mich. 2009), aff'd, 478 F. App'x 271 (6th

Cir. 2012).  Furthermore,

> the mere presence of hearsay or  inaccurate information in a [presentence
> report] does not constitute a denial of due process. The defendant is
> afforded due process protection against sentencing on the basis of
> misinformation through his opportunity to challenge before the court any
> statement in the report that he contends is inaccurate.

Hili v. Sciarrotta, 140 F.3d 210, 216 (2nd Cir. 1998).  Petitioner, therefore, is not entitled to

relief on the basis of allegedly incorrect information in his presentence report.

### 2. The Sentencing Guidelines

Petitioner also disputes the trial court's scoring of the state sentencing guidelines.  Pet. at

37-39.  This claim lacks merit because the state court's interpretation and application of state

sentencing laws and guidelines, like inaccurate information in the presentence report, is a matter

of state concern only, Howard v. White, 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal

court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law."

Pulley v. Harris, 465 U.S. 37, 41 (1984).  Consequently, the contention that the trial court

incorrectly calculated the state sentencing guidelines is not cognizable on federal habeas corpus review. Tironi v. Birkett, 252 F. App'x 724, 725 (6th Cir. 2007).

Petitioner also maintains that he was sentenced on the basis of inaccurate information in violation of his constitutional right to due process. Pet. Br. at 39. To prevail on this argument, Petitioner must show that his sentence was founded on "misinformation of constitutional magnitude," United States v. Tucker, 404 U.S. 443, 447 (1972), or on "extensively and materially false" information that he had no opportunity to correct through counsel, Townsend v. Burke, 334 U.S. 736, 741 (1948). The Court concludes for the following reasons that Petitioner has failed to meet this standard.

### a. The Prior Record Variable

Petitioner asserts that he should not have received twenty points for two or more subsequent or concurrent convictions. Pet. Br. at 37-38. Under the guidelines in effect at the time, twenty points could be scored if the offender had two or more subsequent or concurrent convictions. Raar, 2009 WL 80357, at *8. "The guidelines instruct a score when the offender is convicted of multiple felony counts or is convicted of a felony subsequent to the commission of the instant offense." Id.

Petitioner was convicted in Wayne County a few weeks before his conviction in the Washtenaw County case for which he was being sentenced. Although the Wayne County convictions were prior to, not subsequent to, the conviction in Washtenaw County, the underlying offenses in the Wayne County case were committed after the incident in Washtenaw County. The trial court, therefore, treated the Wayne County convictions as subsequent convictions for purposes of scoring the sentencing guidelines. 5/3/07 Tr. at 7-10. The Michigan

25

Court of Appeals held that the trial court did not abuse its discretion by scoring twenty points for two or more subsequent or concurrent convictions.  Raar, 2009 WL 80357, at *8.

The state courts' interpretation of state law binds this Court.  Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)).   And because Petitioner does not contest the fact that he was convicted of two or more other crimes in Wayne County shortly before his conviction in Washtenaw County, the state court did not rely on materially incorrect information when it scored points for two or more subsequent or concurrent convictions.

### b.  Presence of a Weapon

Petitioner alleges that the trial court erroneously assessed five points for possessing a weapon during the alleged sexual penetration.  Pet. Br. at 38.  The sentencing guidelines at the time permitted five points to be scored for offense variable one if a firearm was displayed, implied, or possessed during the offense.  Raar, 2009 WL 80357, at *8.

Petitioner points out that no gun was produced at trial and that the jury acquitted him of the weapons charge.  Pet. Br. at 38.  HW, however, testified at trial that Petitioner placed a gun on a night stand before penetrating her vagina with his finger.  4/9/07 Tr. at 190-192.  This testimony was sufficient to support the trial court's finding that Petitioner possessed a firearm during the crime.

Petitioner argues that, under Blakely v. Washington, 542 U.S. 296 (2004), the trial court was barred from making findings contrary to the jury's verdict.  Pet. Br. at 38.  This claim lacks merit because Blakely "does not prohibit all judicial factfinding in the sentencing context.  It does not, for example, . . .   preclude a judge from utilizing the preponderance-of-the-evidence

26

standard when finding facts related to sentencing." Montes v. Trombley, 599 F.3d 490, 495 (6th Cir. 2010) (citing United States v. Conatser, 514 F.3d 508, 528 (6th Cir. 2008)).   Stated differently, although the judge-found facts may not contradict the jury's verdict, the differing standards of proof used by judges and juries accommodate the use of acquitted conduct to calculate a defendant's minimum sentence.  Chontos v. Berghuis, 585 F.3d 1000, 1002 (6th Cir. 2009).  Petitioner has no right to relief on basis of his challenge to the trial court's finding that he possessed a firearm during the crime.

### c. Injury to the Victim

Petitioner claims that he should not have received twenty-five points for injury to the victim because the injury was incidental to the offense.  Pet. Br. at 38.  At the time of sentencing, twenty-five points could be scored for offense variable two if the victim suffered bodily injury. Raar, 2009 WL 80357, at *8.

The trial court overruled Petitioner's objection to the scoring of the offense variable because the statute merely prohibited scoring points for bodily injury, if bodily injury was an element of the sentencing offense.   5/3/07 Tr. at 11-13; see also Mich. Comp. Laws § 777.33(2)(d) ("Do not score 5 points if bodily injury is an element of the sentencing offense."). Injury was not an element of the charged offense in Petitioner's case.[3] HW, moreover, testified that, after Petitioner penetrated her vagina with his finger, she was injured and noticed blood in the bottom of her bathing suit.  4/9/07 Tr. at 192, 194.  And, according to the Michigan Court of

---

[3] The prosecutor merely had to prove that Petitioner engaged in sexual penetration and (i) the other person was under the age of thirteen or (ii) he was armed with a weapon or an article used or fashioned to lead the victim to reasonably believe it was a weapon.  Mich. Comp. Laws § 750.520b(1)(a) and (e).

Appeals, the victim's impact statement indicated that Petitioner's acts caused her to bleed.  Raar, 2009 WL 80357, at *8.  The Court of Appeals reasonably concluded that Petitioner's actions caused HW to suffer bodily injury.  Id.  This Court concludes that the state court did not rely on materially false information when it scored twenty-five points for bodily injury to the victim. Townsend, 334 U.S. at 741.

### d.  Number of Penetrations

Petitioner asserts that he should not have received twenty-five points for penetrating the victim more than once because the jury found him guilty of only one penetration.  Pet. Br. at 39. The sentencing guidelines called for a score of twenty-five points if a criminal penetration arose from the same criminal transaction, but trial courts could not count the sexual penetration that formed the basis for the conviction under attack.  Raar, 2009 WL 80357, at *8.

HW testified that there were two penetrations (one oral and one vaginal penetration) 4/9/07 Tr. at 191-192, and the oral penetration was not the penetration that formed the basis for the charged offense.  The trial court therefore did not rely on inaccurate information when it assessed twenty-five points for more than one penetration.

### e.  Psychological Injury

Petitioner objects to the assessment of five points for psychological injury to the victim because, according to him, none of the victim's counseling sessions pertained to him.  Pet. Br. at 38-39.  Under state law, a score of five points was appropriate at the time if a victim or the victim's family suffered serious psychological injury necessitating professional treatment.  Raar, 2009 WL 80357, at *9.  A court is not required to "find that the victim actually sought professional treatment, [Mich. Comp. Laws §] 777.34(2), and the victim's expression of

fearfulness is enough to satisfy the statute." People v. Davenport (After Remand), 779 N.W.2d 257, 263 (Mich. Ct. App. 2009) (citation omitted).

HW testified that she attended counseling sessions for all the abuse that she suffered as a child, 4/9/07 Tr. at 208-209, and her psychotherapist testified that HW expressed fear of Petitioner during her counseling sessions in 1991 to1993, 4/10/07 Tr. at 6-9, 11-12, 15.   HW admitted at trial that she did not talk about Petitioner when she went back for counseling in 1999, but she stated that she resumed counseling because of all the molestation that occurred when she was younger and because of her fear of what Petitioner might do to her parents.  4/9/07 Tr. at 208-209, 212.  One could conclude from this testimony that Petitioner's behavior toward HW caused serious psychological injury requiring treatment.  The trial court, therefore, did not rely on materially inaccurate information when it scored points for psychological injury to the victim.

### 3.  Conclusion on Petitioner's Sentencing Claims

Petitioner's state law claims are not cognizable on habeas review, and the state courts' interpretation of state law binds this Court.  Further, Petitioner was not sentenced on the basis of "misinformation of constitutional magnitude" or on "extensively and materially false" information that he had no opportunity to correct through counsel.  Tucker, 404 U.S. at 447; Townsend, 334 U.S. at 741.  The Court, therefore, declines to grant relief on Petitioner's sentencing claims.

### G.  The Limitations Period (Claim VIII)

Petitioner asserts that the prosecution brought charges against him after the limitations period for criminal sexual conduct expired.  Pet. at 4-5; Pet. Br. at 42-45.  He also implies that an amendment to the criminal sexual conduct statute in 2001 was applied retroactively to his case in

violation of the Ex Post Facto Clause. Pet Br. at 43-44. In making this claim, Petitioner relies on Stogner v. California, 539 U.S. 607 (2003), a case in which the Supreme Court explained that "[t]he Constitution's two Ex Post Facto Clauses prohibit the Federal Government and the States from enacting laws with certain retroactive effects." Id. at 610 (citing Art. I, § 9, cl. 3 (as applied to the Federal Government) and Art. I, § 10, cl. 1 (as applied to the States)).

The law at issue in Stogner, "created a new criminal limitations period that extend[ed] the time in which prosecution [was] allowed. It authorized criminal prosecutions that the passage of time had previously barred. Moreover, it was enacted after prior limitations periods for Stogner's alleged offenses had expired." Id. The Supreme Court therefore held that "a law enacted after expiration of a previously applicable limitations period violates the Ex Post Facto Clause when it is applied to revive a previously time-barred prosecution." Id. at 632-633.

The criminal incident at issue in Petitioner's case occurred in 1989 or 1990. At the time, prosecutors in Michigan were required to charge a person suspected of committing criminal sexual conduct within six years of the crime or by the alleged victim's twenty-first birthday, whichever was later, if the alleged victim was under eighteen years of age when the crime was committed. In 2001, the Michigan Legislature eliminated the statute of limitations for criminal sexual conduct by amending § 767.24 to permit prosecutions for first-degree criminal sexual conduct "at any time." Mich. Comp. Laws § 767.24(1).

HW was born on June 1, 1985, 4/9/07 Tr. at 182, and turned 21 on June 1, 2006. Thus, the statute of limitations for Petitioner's crime had not expired in 2001 when the Michigan Legislature amended § 767.24 to allow for prosecutions of sex crimes at any time. The holding in Stogner does not apply to extensions of unexpired statutes of limitations, Stogner, 539 U.S. at

618, and because the limitations period was eliminated in 2001, the charges lodged against Petitioner in 2006 were not time-barred even if they were filed after June 21, 2006, when HW turned 21.

The state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, <u>Stogner</u>.  Accordingly, Petitioner has no right to relief on the basis of his eighth claim.

### H.  The Psychotherapist's Version of the Complainant's Statements and AB's Statements to Sergeant Walker (Claims IX and X)

Petitioner contends that two prosecution witnesses — HW's psychotherapist Kelly Jagers and AB, HW's childhood friend — gave false testimony at his trial.  Pet. at 5; Pet. Br. at 46-52. The state trial court adjudicated the claim about HW's psychotherapist and rejected the claim on the basis that the therapist's credibility was a matter for the jury to decide.  No state court has adjudicated the merits of Petitioner's claim about AB.

The Supreme Court has stated that prosecutors may not deceive a court and jurors by presenting evidence that they know is false.  <u>Giglio v. United States</u>, 405 U.S. 150, 153 (1972). Nor may they allow false testimony to go uncorrected when it appears.  <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959).  But to prevail on a claim that the prosecutor relied on false testimony, a habeas petitioner must show that (i) the testimony was actually false, (ii) the testimony was material, and (iii) the prosecutor knew the testimony was false.  <u>Amos v. Renico</u>, 683 F.3d 720, 728 (6th Cir.).

#### 1.  The Psychotherapist

Petitioner asserts that HW's psychotherapist, Kelly Jagers, misrepresented HW's counseling records and falsely testified that HW informed her that Petitioner wanted to hurt her

mother.  Pet. Br. at 46-48.  Petitioner claims that HW did not say that he wanted to hurt HW's mother, during the counseling sessions in 1991, and that Ms. Jagers' editorialized version of what HW said to her was prejudicial because it was the only evidence from the time period in question.  Id. at 46.  Petitioner claims that relief is warranted if there is any reasonable likelihood that the false testimony affected the jury's judgment.

Ms. Jagers' progress notes for April 18, 1992, appear to say that HW informed her grandmother that she was angry with Petitioner and "Bob" because they wanted to hurt her mother.  Ms. Jagers apparently acquired this information through her discussion with HW's mother.  4/18/91 Progress Notes, cm/ecf Pg ID 117 (Dkt. 1-2).  Ms. Jagers implied at trial that HW personally informed her that Petitioner wanted to hurt her mother.  4/10/07 Tr. at 9, 15. Despite the slight difference between the progress notes and the trial testimony, the point was that HW confided in someone that Petitioner wanted to hurt her mother.  Therefore, Ms. Jagers' testimony, suggesting that HW had informed Ms. Jagers about the fear HW held that Petitioner would hurt her mother, was not materially false testimony.  And even though HW testified at trial that she did not recall telling anyone, not even her therapist, that Petitioner had threatened her mother, 4/9/07 Tr. at 214, she also testified that Petitioner had told her to do as he said or else he would tell her parents what a bad girl she had been.  She claimed that, at the time, she believed Petitioner was capable of hurting her parents.  Id. at 191-192.

Petitioner has failed to show that Ms. Jagers deliberately deceived the trial court and jury with materially false testimony.  Amos, 683 F.3d at 728.  Petitioner, therefore, has no right to relief on the basis of his claim about Ms. Jagers' testimony.

### 2.  AB's Testimony

32

Exhibits to the habeas petition reveal that HW's childhood friend, AB, informed Detective Kenneth Walker in either 2006 or 2007 that she had no memory of Petitioner placing his hands on her crouch when she played in Petitioner's pool as a child.  Walker Report at cm/ecf Pg ID 124 (Dkt. 1-2).

AB's trial testimony differed.  She testified that, when she and HW played in Petitioner's pool as children, Petitioner and Bob Higgins would pick the girls up between their legs and that both men touched her vaginal area.  4/9/07 Tr. at 249-250.  Petitioner concludes from the difference between AB's trial testimony and her statement to Detective Walker that the prosecutor deliberately led AB to give false testimony and to testify falsely that she reported the misconduct to Detective Sergeant Kenneth Walker during an interview.  Pet. Br. at 49-50; see also 4/9/07 Tr. at 255-256 (AB stating that she told Walker about Petitioner touching her).

While AB appears to have given inconsistent versions of the facts, "mere inconsistencies in testimony by [prosecution] witnesses do not establish knowing use of false testimony." United State v. Lochmondy, 890 F.2d. 817, 822 (6th Cir. 1989).  A witness may give inaccurate testimony due to confusion, mistake, or faulty memory.  United States v. Dunnigan, 507 U.S. 87, 95 (1993).  Petitioner therefore has failed to show that AB's testimony was actually false and that the prosecutor knowingly presented false testimony.

Accordingly, Petitioner has no right to relief on the basis of his perjury claim.

## I.  Lack of Knowledge of an Alleged Pelvic Examination (Claim XI)

Petitioner alleges that, after his trial, he learned of two people who could recall that a pelvic examination was performed on HW in 1991 after her babysitter allegedly touched her inappropriately.  Pet. at 5-6; Pet. Br. at 53-56.  Because the babysitter was not charged with first-

degree criminal sexual conduct, which involves penetration, Petitioner speculates that the examination revealed no signs of sexual penetration. Pet. Br. at 54. He argues that the lack of any evidence of penetration was exculpatory evidence which he could have used at trial and that his right to due process of law was violated because he lacked knowledge of the pelvic examination. Id. at 55-56.

"Under Brady [v. Maryland, 373 U.S. 83 (1963)], the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." Smith v. Cain, 132 S. Ct. 627, 630 (2012). As the Supreme Court stated,

> evidence is 'material' within the meaning of Brady when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. A reasonable probability does not mean that the defendant would more likely than not have received a different verdict with the evidence, only that the likelihood of a different result is great enough to "undermine confidence in the outcome of the trial.

Id. (brackets, internal citations, and quotation marks omitted).

Petitioner "bears the burden of showing [that] the prosecution suppressed evidence." Bell v. Howes, 703 F.3d 848, 853 (6th Cir. 2012). To state a true Brady violation, Petitioner must demonstrate that (i) the evidence at issue was favorable to him, either because it was exculpatory or impeaching, (ii) the State suppressed the evidence, either willfully or inadvertently, and (iii) prejudice ensued. Strickler v. Greene, 527 U.S. 263, 281-282 (1999).

Petitioner has failed to prove at least two of the three elements of a Brady claim. He has not shown that HW was actually examined for signs of sexual abuse and that the prosecution suppressed that information. See id. Even assuming that there was a physical examination,

34

Petitioner merely speculates that the results of the examination were favorable to him.  Petitioner has not stated a true <u>Brady</u> claim.  Accordingly, habeas relief is not warranted.

### J.  The Prosecution (Claim XII) and Alleged Witch Hunt (Claim XIV)

Petitioner claims that HW accused four other individuals of sexually assaulting her over a period of several years and that he was the only person to be prosecuted, despite corroborated allegations of sexual abuse by other men.  Pet. Br. at 57-59.  He concludes that he was the target of a selective, malicious, and vindictive prosecution.  <u>Id.</u>  In a related claim, Petitioner alleges that the prosecution was the continuation of a sixteen-year-old witch hunt, which stemmed from an angry mother's suspicion, the confused memories of a sexually abused woman, his criticism of the Michigan Department of Corrections, and vindictive officials.  <u>Id.</u> at 64-68.

Under the Supreme Court's "selective prosecution doctrine, 'the decision to prosecute may not be deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.'" <u>Reno v. American-Arab Anti-Discrimination Committee</u>, 525 U.S. 471, 497 (1999) (Ginsburg, J., concurring in part and concurring in the judgment) (quoting <u>Wayte v. United States</u>, 470 U.S. 598, 608 (1985)).

Prosecuting attorneys retain broad discretion to enforce criminal laws.  <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996).  Consequently,

> the presumption of regularity supports their prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.

*  *  *

35

> In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present "clear evidence to the contrary.

Id. at 464-465 (brackets, quotation marks, and internal citations omitted).

No state court addressed Petitioner's claims on the merits, but there is no evidence in the record before this Court that Petitioner was charged as a result of his race, religion, or some other arbitrary classification. There also is no evidence that the prosecution was the result of mere suspicion, confused memories, or retaliation for Petitioner's exercise of his right to freedom of speech. HW's allegations provided probable cause to arrest and charge Petitioner with first-degree criminal sexual conduct and felony firearm, and he has presented no clear evidence that the prosecutor violated his right to equal protection of the law.

Accordingly, the Court declines to grant relief on the basis of Petitioner's challenge to the prosecutor's charges.

### K.  HW's Counseling Records (Claims XIII and XV)

#### 1.  The Trial Court's Comment about the Counseling Records (Claim XIII)

Petitioner alleges that the inclusion or admission of HW's counseling records prejudiced him because the trial judge stated that he knew for a fact, and could guarantee, that the complainant's counseling records contained references to Petitioner inappropriately touching the complainant. Pet. at 6; Pet. Br. at 60-63. Petitioner insists that H.W.'s counseling records contain no mention of him inappropriately touching the complainant. He concludes that the trial court engaged in a biased reading of the evidence and made a biased evidentiary ruling concerning the counseling records. Pet. Br. at 61-63.

The United States Court of Appeals for the Sixth Circuit recently explained that

> judicial bias is a deep-seated favoritism or antagonism that makes fair judgment impossible.  A biased decision-maker is constitutionally

36

> unacceptable.  The Due Process Clause clearly requires a fair trial in a fair
> tribunal before a judge with no actual bias against the defendant or interest
> in the outcome of his particular case.

Coley v. Bagley, 706 F.3d 741, 750 (6th Cir. 2013) (brackets, quotation marks, and citations omitted).

The trial judge in Petitioner's case was not the trier of fact, and even if he was wrong about the counseling records containing references to Petitioner touching H.W. inappropriately, the records were not admitted in evidence.  Furthermore, the trial court's allegedly biased comments occurred at a pretrial hearing on whether Petitioner was entitled to appointment of an expert witness and investigator.  No such comments were made at trial or in the jury's presence. The trial judge may have been mistaken about the records and even exposed to bad facts about Petitioner, but"[e]xposure to bad facts about the defendant does not, as a per se matter, establish bias," even if the judge received the information in a pretrial proceeding.  Id.

Accordingly, habeas relief is not warranted on Petitioner's claim about the trial court's alleged bias.

### 2.  The Handling of the Counseling Records (Claim XV)

In his other claim about HW's counseling records, Petitioner alleges that the records were not handled properly.  Pet. at 7; Pet. Br. at 70-72.  He contends that the prosecutor subpoenaed the records and that H.W. obtained the records before the trial court ordered their release.  Pet. Br. at 70-72.  He maintains that, under those circumstances, the authenticity of the records is questionable, and, because certain notes, drawings, and other documents apparently were not included with the released records, he contends that the completeness of the records also is questionable.  Id. at 71-72.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004). Any errors in the handling of the counseling records in this case did not deprive Petitioner of due process because his trial attorney had an opportunity to cross-examine the psychotherapist about her progress notes and records concerning HW.

Accordingly, the Court declines to grant habeas relief on the basis of Petitioner's challenge to the authenticity, completeness, and handling of HW's counseling records.

### L.  Certificate of Appealability and In Form Pauperis Status on Appeal

Petitioner may not appeal the Court's denial of his habeas petition unless a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Where, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further. The Court, therefore, declines to issue a certificate of appealability. Petitioner nevertheless may proceed in forma pauperis on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

## VI. CONCLUSION

The state courts' adjudication of some habeas claims on the merits was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and Petitioner's remaining claims lack merit. Consequently, the petition for writ of habeas corpus (Dkt. 1) is denied.

SO ORDERED.


Dated:  July 28, 2014                    s/Mark A. Goldsmith
        Flint, Michigan                  MARK A. GOLDSMITH
                                         United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 28, 2014.

                                         s/Deborah J. Goltz
                                         DEBORAH J. GOLTZ
                                         Case Manager